May 9, 2025

**Supreme Court**

Edgar Sepulveda, in his capacity as  :
Trustee of the 7 Half Mile Road Living
Trust

No. 2024-28-Appeal.
(PC 20-2432)

v.         :

John Buffum et al.        :

John Buffum et al.        :

No. 2024-29-Appeal.
(PC 20-554)

v.         :

Edgar Sepulveda.      :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Edgar Sepulveda, in his capacity as Trustee of the 7 Half Mile Road Living Trust

:

No. 2024-28-Appeal.
(PC 20-2432)

v.

:

John Buffum et al.

:

John Buffum et al.

:

No. 2024-29-Appeal.
(PC 20-554)

v.

:

Edgar Sepulveda.

:

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.**  "Good fences make good neighbors."[1]

Unfortunately, on occasion, no fences make disputatious neighbors.  Such is the case in these consolidated appeals in which Edgar Sepulveda appeals from judgments in favor of John Buffum and Angie Salem on: (1) Sepulveda's claim for adverse possession; and (2) Buffum and Salem's claims for trespass and declaratory relief.[2] The judgments directed Sepulveda to remove the driveway he installed on land bordering his property located at 7 Half Mile Road in Barrington and the property

---

[1] From "Mending Wall" by Robert Frost.

[2] For purposes of clarity in these consolidated appeals, Edgar Sepulveda will be referred to as "Sepulveda."  John Buffum and Angie Salem, a married couple, will be collectively referred to as "Buffum and Salem."  No disrespect is intended.

- 1 -

of Buffum and Salem located at 5 Half Mile Road (the disputed area). Additionally, the Superior Court judgments included an injunction prohibiting Sepulveda from entering the disputed area. Before this Court, Sepulveda argues that the trial justice erred in finding that Sepulveda's exclusive use of the disputed area did not begin until 2016 or 2017, falling short of the ten-year exclusive use element of adverse possession. Sepulveda also contends that the trial justice reached this conclusion erroneously by finding his testimony wanting in credibility.

These cases came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in these appeals should not be summarily decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that these cases may be decided without further briefing or argument. For the reasons set forth herein, we affirm the judgments of the Superior Court.

# I

## Facts and Travel

We derive the following facts from the two-day bench trial that was held before the Superior Court on October 3 and 4, 2023. Sepulveda has resided in his home at 7 Half Mile Road in Barrington, Rhode Island, since 2003. Abutting Sepulveda's property to the east is 5 Half Mile Road, where Buffum and Salem have resided since July 2018. The parties dispute the ownership of an area within Buffum

and Salem's surveyed boundaries at 5 Half Mile Road. The disputed area includes a bed of mulch, bushes, trees, and a small portion of Sepulveda's reconfigured circular driveway. Of note, Sepulveda testified that, prior to Buffum and Salem's purchase of their home, he made an offer to buy 5 Half Mile Road but did not tell the realtor that he claimed ownership of the disputed area.

After Buffum and Salem purchased their property in July 2018, Buffum began working on the yard. Eventually, he set out to clean up the overgrowth of vines and bushes in the disputed area. After trimming and removing excess growth on and around the bushes within the disputed area, Buffum continued to mulch the border of his property from the street to his backyard fence line, including parts of the disputed area. After Buffum completed this work, Sepulveda expressed his concern with Salem, claiming that he owned and controlled the disputed area, prompting a conversation about the property between Sepulveda and Buffum.

When Sepulveda and Buffum spoke, Sepulveda inquired as to why Buffum had trimmed the bushes. In response, Buffum explained that he performed yardwork on his own land, as confirmed by a land survey that he had completed on the property. Buffum continued to explain that, according to the survey, not only were the bushes that he had trimmed on his property, but part of Sepulveda's newly configured circular driveway was also on his property.

According to Buffum's testimony at trial, Sepulveda responded by saying that "[he had] been maintaining this property exclusively and continuously for over ten years." Buffum testified that "it was very strange * * * that [Sepulveda] used those exact words[,]" prompting Buffum to ask Sepulveda if he was "claiming adverse possession[.]" In response, according to Buffum, Sepulveda simply reiterated that he "maintained this land continuously, [and] exclusively, for over ten years."[3] Buffum went on to testify that he never saw Sepulveda doing landscaping in the disputed area. Indeed, Buffum saw only one other person working in the disputed area. Salem also testified that she had once witnessed Steven Rufino, Sepulveda's landscaper, working in the disputed area; she told him to leave and called the police. Both Buffum and Salem testified that they have no personal knowledge of who maintained the disputed area from 2003, when Sepulveda purchased 7 Half Mile Road, to 2018, when they purchased 5 Half Mile Road.[4]

At trial, Sepulveda testified that he believed that the disputed area was part of his property from 2003 to 2018. Sepulveda further testified that, during that time, only he, Rufino, and Rufino's employees maintained the disputed area. According to Rufino's testimony, Sepulveda is a good customer and a "good man" with whom

_____

[3] We note that, at the time of trial, Sepulveda had been involved in the real estate business for approximately twenty-four years, held a commercial real estate license, and was a member of the Appraisal Institute.

[4] The immediate past owner of Buffum and Salem's property is deceased.

he has shared a long professional relationship. Indeed, Rufino also testified that he and his employees have been doing landscaping work in the disputed area since 2003. Additionally, Rufino installed Sepulveda's new circular driveway, a portion of which encroaches upon the disputed area. Rufino recalled that he may have installed the driveway four years before trial but noted that he is "not good with dates."

Sepulveda testified that it was, in fact, about four years before trial when he had Rufino construct his new driveway. During his testimony at trial, Sepulveda recognized a photograph of his former driveway before the new construction and identified a gray, rectangular boundary marker. Sepulveda further stated that he moved his driveway into the space where the gray boundary marker was but maintained that he did not move that marker. Additionally, Sepulveda discovered a rod-and-cap or pin boundary marker protruding from his driveway, which he removed and left "probably somewhere around [his] property * * *."

The pin had been placed there as a boundary marker by David Gardner, a surveyor. Indeed, in 2007, Sepulveda hired Gardner to perform a survey for him that shows the boundary between the 7 Half Mile Road property and the 5 Half Mile Road property. Sepulveda saw Gardner again in 2018 while he was performing a survey for Buffum and Salem. Sepulveda testified that Gardner "probably" told him that his driveway was encroaching on the 5 Half Mile Drive property.

The transcript of Gardner's deposition was admitted at trial, in which Gardner explained that he completed a survey for Buffum and Salem and detailed his interaction with Sepulveda during that survey project.[5] Gardner confirmed that he informed Sepulveda that his new driveway extended onto Buffum and Salem's property, to which Sepulveda commented that he thought his property line was "further over." Gardner could no longer locate the boundary monuments that he had seen in 2007, when he performed the survey for Sepulveda. Consequently, Gardner inserted a new steel pin at the property corner located on Sepulveda's new gravel driveway to mark the boundary between the two properties. This, according to Gardner, showed that the driveway encroached on Buffum and Salem's property.

Eventually, Buffum and Sepulveda had a conversation regarding the pin that was inserted into Sepulveda's new gravel driveway during which, according to Buffum, Sepulveda stated that the pin could not remain there. About one week later, Buffum noticed that the pin in Sepulveda's driveway was gone. Later, Buffum testified, he agreed to meet Sepulveda at a local Starbucks concerning the disputed area but came away frustrated because Sepulveda continued to assert that he owned the area by virtue of his alleged maintenance of the area. The meeting ended with no resolution.

_____

[5] The parties stipulated to enter into evidence as an exhibit Gardner's deposition because he was unavailable to testify at trial.

Buffum also testified that around Halloween one year, he and his wife noticed that several decorations that they had affixed to a tree in the disputed area had been removed and left on the ground. At trial, Sepulveda testified that he "probably did" remove the Halloween decorations, contradicting a previous denial made in his admissions.

On January 23, 2020, Buffum and Salem filed suit against Sepulveda for trespass and seeking a declaratory judgment to establish "their exclusive right, title and interest in their property at 5 Half Mile Road, Barrington, * * * the wrongful encroachments by [Sepulveda], * * * [and] the lack of any right, title or interest by [Sepulveda] in their property." Later, on March 16, 2020, Sepulveda filed suit against Buffum and Salem claiming ownership of an area of land by adverse possession and seeking injunctive relief. These two cases were consolidated in the Superior Court and were tried together during one jury-waived trial.

Ultimately, the trial justice issued a written decision in favor of Buffum and Salem and against Sepulveda. The trial justice began his decision with credibility assessments of each of the witnesses who testified at trial. He found that Sepulveda's credibility was "lessened" when he denied knowing the current whereabouts of the missing boundary markers after stating that he had seen them. The trial justice indicated that Sepulveda's answers regarding the boundary marker and pins were unresponsive, confrontational, and vague. Additionally, the trial justice found that

Sepulveda was vague on how he exercised control over the disputed area or whether his use was notorious, as required to prove adverse possession. The trial justice concluded that Sepulveda's reliability was questionable and remarked that "Mr. Sepulveda's lack of specifics, lack of paperwork to substantiate his testimony, and his vague response to what Mr. Gardner told him of the encroachments lessened his credibility considerably." Conversely, the trial justice found Buffum to be "quite credible." The trial justice found Buffum to be consistent, detailed, and methodical. Similarly, the trial justice found Gardner's deposition testimony to be consistent and credible.

In his decision, the trial justice continued with an explanation and analysis of the elements of adverse possession. The trial justice ultimately found that

> "Mr. Sepulveda claims he has acquired the disputed property by way of adverse possession because he has 'been maintaining [the] property exclusively and continuously for over ten years.' * * * Despite his claim, Mr. Sepulveda has not presented any credible evidence as to his use or possession of the disputed property prior to the construction of his driveway, which partially sits on said property. Therefore, this [c]ourt finds that Mr. Sepulveda's use of the property started when a portion of his driveway was first built on the disputed area and not before that date."

The trial justice also found that Sepulveda's "new driveway was installed in 2016 or 2017," marking the beginning of his use of the disputed area. As such, Sepulveda's

use lasted only three or four years and did not meet the ten years of use necessary to successfully establish ownership by adverse possession.

In addition, the trial justice determined that "because Mr. Sepulveda conclusively established * * * that he impermissibly intruded upon the Buffum/Salem land but did not establish adverse possession, Buffum/Salem have demonstrated that Mr. Sepulveda's actions constitute[d] a trespass to land."

Judgment entered on November 25, 2024. Therein, the trial justice entered: a declaratory judgment of ownership for Buffum and Salem; judgment in favor of Buffum and Salem on their trespass claim; and judgment against Sepulveda on his claims of adverse possession and loss of use and enjoyment. The trial justice also issued two injunctions; one requiring Sepulveda to "forthwith remove the driveway that encroaches on the disputed area and replace the survey markers," and the other "barring Mr. Sepulveda from entering upon or using the disputed area." These now-consolidated appeals ensued.

## II

### Standard of Review

"It should be borne in mind that the instant case was tried before a trial justice sitting without a jury; accordingly, we recall the basic principle of appellate jurisprudence that 'this Court views deferentially the factual findings of a trial justice sitting in a nonjury case.'" *Carrozza v. Voccola*, 90 A.3d 142, 151 (R.I. 2014)

(brackets omitted) (quoting *Manchester v. Pereira*, 926 A.2d 1005, 1011 (R.I. 2007)). "Consequently, we will not disturb a trial justice's factual findings or credibility determinations 'unless they are clearly erroneous or the trial justice misconceived or overlooked material evidence or the decision fails to do substantial justice between the parties.'" *Id.* (deletions omitted) (quoting *Cahill v. Morrow*, 11 A.3d 82, 86 (R.I. 2011)).

Furthermore, this Court "give[s] great deference to the trial justice's determinations of credibility * * * because it was the trial justice who had the opportunity to observe the witnesses' live testimony and the witnesses' demeanor." *Anton v. Houze*, 277 A.3d 695, 705 (R.I. 2022).

**III**

**Discussion**

On appeal, Sepulveda advances one principal argument, claiming that the trial justice erred by "fail[ing] to properly consider the uncontested evidence in the [r]ecord concerning the possession of the [d]isputed [a]rea from 2003 to 2018." Sepulveda argues that he and his landscaper Rufino were the only individuals to maintain the disputed area from 2003 to 2018, and he points out that they were the only individuals to testify to that fact at trial. Sepulveda highlights that Buffum and Salem did not offer any evidence to contradict his testimony to that end. Furthermore, Sepulveda maintains that the trial justice erroneously rejected the

testimony of Sepulveda and Rufino and ascribes this rejection to "sweeping and unsubstantiated credibility determinations." Sepulveda argues that his testimony is uncontradicted and that, therefore, it should not have been rejected by the trial justice.

In response, Buffum and Salem argue that the trial justice was correct in finding that Sepulveda and Rufino lacked credibility. Buffum and Salem submit that "[c]ross-examination hoisted Sepulveda on his own petard." They maintain that Sepulveda and Rufino "were impeached, contradicted[,] and proven evasive." Specifically, Buffum and Salem point out that Sepulveda's testimony regarding the whereabouts of boundary markers and pins was "bizarrely non-responsive." Additionally, they argue that Sepulveda was impeached on inconsistencies between his testimony at trial and his verified complaint and admissions. Buffum and Salem also submit that Rufino's testimony was biased rather than reliable because "Ruffino [*sic*] regards Sepulveda as a good customer for whom he has worked on multiple properties."

Buffum and Salem further argue that Sepulveda knew where his property boundary was and that his driveway encroached upon Buffum and Salem's property. They point out that Sepulveda hired Gardner to perform survey work on his property in 2007. The resulting survey identified the boundary between Sepulveda's land and the land that Buffum and Salem would purchase years later, and Gardner's work

revealed existing boundary markers on the land that would later be removed. Buffum and Salem recall that Gardner testified that he informed Sepulveda that his driveway encroached upon Buffum and Salem's land—a fact that, at trial, Sepulveda admitted "probably" happened. Buffum and Salem also indicate that Sepulveda never produced any records or documentation of his maintenance of the disputed area.

The trial justice found Sepulveda's testimony of limited credibility. He found that "Mr. Sepulveda's lack of specifics, lack of paperwork to substantiate his testimony, and his vague response to what Mr. Gardner told him of the encroachments lessened his credibility considerably." As the trial justice began his analysis of the exclusive-use element required to prove adverse possession, he reasoned that

> "Mr. Sepulveda has not presented any credible evidence as to his use or possession of the disputed property prior to the construction of his driveway, which partially sits on said property. Therefore, this Court finds that Mr. Sepulveda's use of the property started when a portion of his driveway was first built on the disputed area and not before that date."

This analysis shows that the trial justice weighed Sepulveda's low credibility in determining whether the exclusive-use element of adverse possession was proven.

In order to acquire land by adverse possession, "[a] claimant must prove actual, open, notorious, hostile, continuous, and exclusive use of the property under

- 12 -

a claim of right for at least a period of ten years." *O'Keefe v. York*, 308 A.3d 983, 991 (R.I. 2024) (brackets omitted) (quoting *Union Cemetery Burial Society of North Smithfield v. Foisy*, 292 A.3d 1205, 1214 (R.I. 2023)). "The party asserting title by adverse possession must establish the required elements by strict proof, that is, proof by clear and convincing evidence." *Id.* (quoting *Union Cemetery Burial Society of North Smithfield*, 292 A.3d at 1214). Landscaping and yard maintenance may suffice to demonstrate open and notorious use of land. *Union Cemetery Burial Society of North Smithfield*, 292 A.3d at 1217-18. Sepulveda's own witness testimony and that of Rufino constituted the only evidence offered to prove Sepulveda's claim of exclusive use through alleged maintenance of the disputed area for at least ten years. Considering his dubious credibility, Sepulveda was unable to prove exclusive use.

As this Court has consistently held, credibility determinations rest "within the sound discretion of the trial justice." *Leon v. Krikorian*, 271 A.3d 985, 991 (R.I. 2022) (quoting *Guertin v. Guertin*, 870 A.2d 1011, 1020 (R.I. 2005)). We "give great deference to the trial justice's determinations of credibility * * * because it was the trial justice who had the opportunity to observe the witnesses' live testimony and the witnesses' demeanor." *Anton*, 277 A.3d at 705. Indeed, in this case, the trial justice did not find Sepulveda to be credible, and so his testimony at trial was insufficient to prove his exclusive use of the disputed area for at least ten years. We

defer to the trial justice's assessment of credibility, as pronounced in his well-reasoned decision.[6]

As discussed *supra*, Sepulveda also argued that his testimony regarding his use of the disputed area from 2003 to 2018 was uncontradicted. This argument asserts that there was no other testimony at trial or other evidence that showed that Sepulveda did not exclusively use the disputed area from 2003 until 2018. Sepulveda offered no other evidence to prove his claim, other than the witness testimony of Rufino. When faced with uncontradicted witness testimony and questions of credibility, this Court has held that "a witness's uncontroverted, positive testimony ordinarily is conclusive upon the trier of fact. Nevertheless, this Court has held 'that a trial justice may refuse to accept the uncontroverted testimony of proffered witnesses' under certain circumstances." *Pelletier v. Laureanno*, 46 A.3d 28, 39 (R.I. 2012) (quoting *Paradis v. Heritage Loan and Investment Co.*, 701 A.2d 812, 813 (R.I. 1997) (mem.)).

"For example, positive uncontroverted testimony may be rejected if it contains inherent improbabilities or contradictions, which alone, or in connection with other

---

[6] We note that Sepulveda's testimony that he made an offer to purchase 5 Half Mile Road but did not indicate his ownership of the disputed area might be construed by a factfinder as evidence of his recognition of the superior title of the record owner of said property, and thus it might constitute an independent ground for affirming the judgment. *See Cahill v. Morrow*, 11 A.3d 82, 90 (R.I. 2011). This issue was not raised in the Superior Court, and we decline to address it on appeal.

circumstances, tend to contradict it." *Pelletier*, 46 A.3d at 39 (brackets omitted) (quoting *Laganiere v. Bonte Spinning Co.*, 103 R.I. 191, 194, 236 A.2d 256, 258 (1967)). "Such testimony may also be disregarded if it lacks credence or is unworthy of belief, especially if the testimony is that of a party to the litigation or of an interested witness." *Id.* (deletion omitted) (quoting *Laganiere*, 103 R.I. at 194-95, 236 A.2d at 258). "Rejection on credibility grounds may not, however, be arbitrary or capricious, nor may it be left to the whim of a trier of fact." *Id.* (deletion and brackets omitted) (quoting *Laganiere*, 103 R.I. at 195, 236 A.2d at 258). "Moreover, a trier of fact who disregards a witness's positive testimony because in his or her judgment it lacks credibility should clearly state, even though briefly, the reasons which underlie his or her rejection." *Id.* (brackets omitted) (quoting *Laganiere*, 103 R.I. at 195, 236 A.2d at 258).

In this case, the trial justice's findings were sufficient to reject the credibility of Sepulveda and Rufino. The trial justice clearly stated that Rufino lacked credibility due to bias, and he reasoned that Rufino "was concerned about attempting to keep Mr. Sepulveda, his customer, satisfied with his testimony." Rufino noted that Sepulveda was a "good man," and that the two had a long-standing business relationship. This supports the trial justice's finding of bias because Rufino clearly has an interest in providing testimony that is beneficial to Sepulveda. The trial

justice also noted that Rufino was "extremely unsure" of dates, produced no paperwork, and was unreliable.

Similarly, the trial justice found that "Mr. Sepulveda's lack of specifics, lack of paperwork to substantiate his testimony, and his vague response to what Mr. Gardner told him of the encroachments lessened his credibility considerably." The trial justice continued to reason that "[Sepulveda] was just as vague about how he exercised control over the area or whether his use was notorious as well as about whether he had been shown the [G]ardner survey before suit commenced." The trial justice detailed his rationale in arriving at the conclusion that Sepulveda lacked credibility. We perceive no cause to disturb his findings in that regard.

Therefore, we hold that the trial justice acted well within his discretion in assessing credibility. The trial justice was the factfinder present to observe and evaluate the live witness testimony, and his inferences therefrom are informative. We are satisfied, therefore, that his findings were not clearly erroneous or born out of evidentiary misconceptions, or that they failed to provide justice between the parties.

## IV

### Conclusion

For the foregoing reasons, we affirm the judgments of the Superior Court. The papers in this case may be remanded to that tribunal.

## STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI  02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Edgar Sepulveda, in his capacity as Trustee of the 7 Half Mile Road Living Trust v. John Buffum et al. <br><br> John Buffum et al. v. Edgar Sepulveda. |
| **Case Number** | No. 2024-28-Appeal.  (PC 20-2432) <br> No. 2024-29-Appeal.  (PC 20-554) |
| **Date Opinion Filed** | May 9, 2025 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Jeffrey A. Lanphear |
| **Attorney(s) on Appeal** | For Plaintiff/Defendant: <br><br> Armando E. Batastini, Esq. |
| | For Defendants/Plaintiffs: <br><br> Harris K. Weiner, Esq. |